WILLIAMS, BLACK & CO. v. THE WILMINGTON AND WELDON
RAILROAD CO.

*Common Carrier—Liability on Bill of Lading—Agency.*

A common carrier is not bound by a bill of lading issued by its agent unless the goods be actually received for shipment ; and the principal is not estopped thereby from showing, by parol, that no goods were in fact received, *although the bill has been transferred to a bona fide holder for value.*

(*Brown* v. *Brooks*, 7 Jones, 93, and *Smith* v. *Brown*, 3 Hawks, 580, cited and approved).

CIVIL ACTION, tried before *Gudger, Judge,* at Fall Term, 1884, of EDGECOMBE Superior Court.

The action was founded on the facts embodied in the following " case agreed " :

One L. G. Estes on the 10th day of May, 1882, delivered to the local station agent of the defendant corporation, at Enfield, N. C., the said defendant being a common carrier, engaged in transporting cotton from Enfield to New York, ten bales of cot-

ton, and took from said agent a bill of lading therefor to Hilliard & Co., Norfolk, Va. ; that on the next day the said L. G. Estes went to the said agent and stated to him that he desired to ship the said cotton to the plaintiffs, Williams, Black & Co., at New York, and thereupon the said agent, without taking up or cancelling the first aforesaid bill of lading, issued to said L. G. Estes another bill of lading for said cotton (ten bales), to be shipped to the plaintiffs at New York.   The said L. G. Estes forwarded the said bill of lading to both parties and drew upon the plaintiffs a draft for the value of said cotton, which was paid by the plaintiffs, they reposing confidence in said bill of lading. There was no cotton delivered to said agent other than the ten bales for which bill of lading had been issued to Hilliard & Co. The said cotton was sent to Hilliard & Co., and never delivered to the plaintiffs.    There were only ten bales of cotton delivered to said agent by said Estes, and no cotton actually delivered on the bill of lading issued to plaintiffs.

On the 17th day of May, 1882, the said L. G. Estes carried to the said agent of the defendant, at Enfield, N. C., a bill of lading filled up for eight bales of cotton to be sent to the plaintiffs at New York, which bill of lading said agent signed and delivered to the said L. G. Estes, who forwarded the same to the plaintiffs, drawing draft for the value thereof, which draft was paid by plaintiffs, they reposing confidence in said bill of lading. That only two bales of cotton were in fact delivered to the said agent; that the plaintiffs never received any notice from the defendant that the aforesaid cotton had not been delivered and shipped as purported by the said bill of lading, but paid the said drafts, believing that said cotton had been forwarded as set forth therein.

That the plaintiffs had never received any payment for the amounts advanced on said draft from said L. G. Estes or any one else, and the said L. G. Estes is insolvent.   The plaintiffs have demanded of the defendants payment for the said cotton, which has been refused.

If upon the foregoing facts, the Court shall be of the opinion that the defendant is liable to the plaintiffs for the value of said cotton, judgment is to be rendered in favor of the plaintiffs and against the defendant for the sum of $800, with interest thereon from the 10th day of May, 1882, and for cost; otherwise judgment shall be rendered against the plaintiffs for the cost of this action.

Judgment for the plaintiffs, from which defendant appealed.

No counsel for the plaintiffs.
*Mr. John L. Bridgers, Jr.*, for the defendant.

SMITH, C. J. (after stating the above facts). The action is prosecuted for the recovery of the value of the undelivered cotton mentioned in the two bills of lading, upon the faith of which and under an arrangement with the consignor they made full advancements in honoring his drafts. It does not proceed upon an allegation of fraud practiced through the instrumentality of the defendant's agent, and made successful by means of the false bills of lading. We must therefore consider the case as resting upon contract or the common law liabilities of carriers of goods for their safe transportation and delivery to the consignees and the failure of the defendant to do so.

The authorities cited and discussed in the well prepared brief of defendant's counsel seem to sustain his proposition that the authority to issue such bills depends upon the actual delivery of goods, and if issued without delivery they do not bind the principal, and that this defence is open to the latter. Some of the authorities to this effect we propose to refer to.

" Except as against a *bona fide* transferee of the bills of lading for value," remarks a recent writer, " the carrier may contradict it as *to the delivery to him of the goods,* or as to their description, quality or condition." Abbott's Trial Evi., 537, §45.

Carrying the rule still further, Mr. Daniel, in his excellent work on Negotiable Instruments, vol. 2, §1733, states it thus:

"Although the bill of lading is signed by the master of the ship, his subscription is as agent for the owners, and the contract is binding upon them. But the master has no authority to grant a bill of lading unless the goods be *actually received on board the ship;* and if he transcends his authority in this respect, and the goods be not on board, the ship owners will not be bound by the bill, *although it be transferred to a bona fide endorsee for value.*"

So it is said by the Supreme Court of the United States that the general owner is not "estopped from showing the real character of the transaction by the fact that libellants advanced money upon the faith of bills of lading." *Freeman* v. *Buckingham,* 18 How., 182; *Pollard* v. *Vinton,* 105 U. S., 7.

In like manner Mr. Justice DAVIS, delivering the opinion of the court in the *Lady Franklin,* 8 Wall., 327, and reiterating the doctrine, says: "The attempt made in the prosecution of this libel to charge this vessel for the non-delivery of a cargo which she never received and, therefore, could not deliver because of a false bill of lading, cannot be successful, and we are somewhat surprised that the point is pressed here."

He adds: "In this case the bill of lading acknowledges the receipt of so much flour and is *prima facie* evidence of the fact. It is, however, not conclusive on this point, but may be contradicted by oral testimony."

Upon similar grounds are the rulings in this court which declare written acknowledgments of money received liable to contradiction by parol proof when no contract is formed by them, as in *Brown* v. *Brooks,* 7 Jones 93; *Smith* v. *Brown,* 3 Hawks, 580, and other cases.

When no goods are placed in custody of the carrier's agent to transport, there is no subject matter to support a contract, and hence no obligation is imposed by the receipt put in the form of a contract. There can be no conveyance unless there be something to convey, and therefore no breach of obligation or duty.

The result is that the defendant company has incurred no liability in this form of action by the bill of lading for eight bales

given in May. Of them only two were delivered to the agent and they were consigned to the plaintiffs and received by them.

But the company is responsible for the failure to carry and deliver the ten bales mentioned in the bill of May preceding. These did pass into the possession of the agent, and although their first destination was fixed in the contemporary bills at Norfolk to a consignee there doing business, it was competent for the consignors to change this and direct transportation to the plaintiffs in New York. This new, superseded the first contract and annulled all liability under it. The cotton being then in possession of the company it was competent to issue the second bill and undertake to transport the goods to the plaintiffs at New York. This was a valid contract and was broken by the failure to carry to the plaintiffs, and, instead, conveying to the consignees at Norfolk under the superseded contract.

There is error in entering up judgment for six bales of cotton described in the last bill of lading, and the plaintiffs should have received only the value of the ten first delivered.

The form of the case agreed will not permit of a reform of the judgment, for it requires us to sustain it in its entirety or render judgment for the defendant. The aspect of the case as considered by us seems not to have been contemplated by the parties, and, therefore, reversing the judgment, we remand it for further proceedings in the Court below.

Error.                                        Judgment accordingly.